DAVID JOHNSON v. HARRISON BAYLEY.

*(In Chancery.)*

The charter of the town of Newbury, granted by the governor of New-York to Jacob Bayley and others, was in confirmation of a grant of said town previously made by the governor of New-Hampshire, and said Bayley held the township, so granted, in trust for the proprietors named in the charter from the governor of New-Hampshire.

Where a grantee under the New-Hampshire charter had always claimed a particular right, — paid all the taxes thereon, but had never taken possession of a wild lot belonging to such right, he was treated as the owner of such lot and said Bayley as holding in trust for him, and where the administrator of said Bayley had sold and deeded the lot to the defendant, after a lapse of over sixty years from the time of said grant, the defendant was decreed to convey the lot to the orator, who was the owner thereof under a proprietor named in the N. H. charter, and had always paid the taxes thereon.

THIS was an appeal from a decree of the court of chancery, that the defendant execute and deliver to the orator a deed of quit claim, of a lot of land in Newbury, containing one hundred acres, being lot No. 55.

The orator, in his bill, set forth and charged, among other things, in substance, that on the 18th day of May, 1763, the governor of New-Hampshire granted a charter of the town of Newbury, in the county of Orange, to Jacob Bayley, John Hugh and certain other persons therein named; that, immediately afterwards, viz., in 1763, the said grantees took possession of said town, caused the same to be surveyed, and divided the lands therein among said grantees; that, in this division, lot No. 55, containing one hundred acres, was drawn and set to the right of John Hugh; that in consequence of the order in council of the government of Great Britain, made on the 20th of July, 1764, and of the controversy between New-York and New-Hampshire, relative to the division line between those (then) provinces, the proprietors of Newbury, at a regular meeting, held in 1771, by

vote, authorized and appointed the said Bayley to proceed to New-York and procure for them a charter from the governor of that province, confirming to them the charter so granted by the governor of New-Hampshire ; that, in pursuance of said vote, the said Bayley proceeded to New-York, and, by petition in writing, represented to the governor of New-York that the governor of New-Hampshire had granted to him and the other proprietors of Newbury, a charter of said town, &c., and that said proprietors had authorized him to obtain, in trust for them, a charter of said town from the governor of New-York for the purpose of quieting their title to said town, that, thereupon, the governor of New-York granted a charter of said town to the said Bayley and twenty-four other individuals therein named, dated March 19, 1792, as a confirmation grant to said proprietors ; that on the 21st day of March, 1792, the twenty-four grantees, named with the said Bayley, in said last mentioned charter, released and conveyed, to said Bayley, all their right, title and interest to the lands in said Newbury, under said last mentioned charter ; that said charter from the governor of New-York, and said release from said grantees to said Bayley were made to him in trust for the proprietors and owners of said land under the New-Hampshire charter, and were so received and accepted by said Bayley ; that said Bayley, when requested, quit claimed, from time to time, to the owners of land in said town, under the New-Hampshire charter, the tracts of land severally owned by them, without demanding any consideration for such conveyances ; that no proceedings were ever had, nor survey made under the New-York charter, but the same was always regarded by said proprietors as a confirmation of the grant previously made by the governor of New-Hampshire, and that said Bayley never set up any claim or title to any of said lands, under the New-York charter, or under said release from the other grantees to him, but always treated his title under the New-York charter as one held in trust for the benefit of the proprietors and purchasers under the New-Hampshire grant.

And the orator further set forth and charged, that the said John Hugh and Anna, his wife, on the third day of March, 1770, for the consideration of one hundred and forty pounds by their deed of that date, duly executed, conveyed said lot,

No. 55, with other lands, to one Samuel Hale; that said Hale, on the 20th of December, 1779, for the consideration of thirty pounds, by his deed of that date, duly executed, conveyed said lot No. 55, to Thomas Johnson, the father of the orator; that the said Thomas, by his last will and testament, devised said lot, No. 55, to the orator and other devisees, and that after the death of said Thomas, his said will was duly proved and allowed in the probate court for the district of Bradford, to wit, on the 20th of February, 1819, and that the other devisees of said Thomas afterwards conveyed all their interest in said lot, No. 55, to the orator; that said Bayley died, in the year 1815, poor; that no administration was taken of his estate until the 27th day of September, 1832, on which day administration thereof was granted to Tappan Stevens, by the probate court for the district of Bradford, who, on the same 27th day of September, 1832, obtained license fom said probate court to sell all the real estate of the said Jacob Bayley; that the defendant, prior to the 14th day of February, 1842, frequently applied to said Stevens to convey to him said lot No. 55, but the said Stevens from time to time declined making such conveyance, and assigned as a reason therefor, that said lot equitably belonged to the orator, and that he, Stevens, had no right to sell the same; that on the day and year last, aforesaid, the said Stevens, as such administrator, conveyed said lot, No. 55, to the defendant, by deed of quit claim, for which deed, the defendant gave his note for fifty dollars, which remained unpaid; — that the orator had commenced an action of ejectment, against the defendant, to recover the seizin and possession of said lot, No. 55, which was still pending in the Orange county court, and praying that the defendant might be enjoined from setting up any title to said lot, in said action, and that he be decreed to convey said lot No. 55, to the orator, and for further relief.

The defendant, in his answer, denied the equity of the orator's claim, and that Jacob Bayley held said lands under the charter from the governor of New-York, in trust for the grantees and proprietors under the charter from the governor of New-Hampshire. He also denied all knowledge of the orator's claim as *cestui que trust*, but admitted that he knew the orator claimed the lot in question, and supposed that

claim to be fonnded on the orator's possession. The points of defence, stated and relied upon in the answer, sufficiently appear from the opinion of the court.

The answer was traversed, and testimony taken. The facts found by the court, are, also, fully stated in the opinion. Among the witnesses who testified was Isaac Bayley, a son of Jacob Bayley, the latter being known as general Bayley.

*W. Upham* and *E. Farr* for defendant,

1. We contend, that the orators have no title to the lot of land in question, either in law or equity. The legal title is admitted to be in the defendant, and the equitable title is presumed to be there also, unless clearly proved to be elsewhere.

2. That there was no trust on the part of Jacob Bayley, created by the New York charter, within the power of a court of equity to enforce. He procured the charter at his own expense. No funds were furnished him by the persons who claimed to be the proprietors of Newbury, under the New Hampshire charter. No trust appears on the face of the charter, and no writing was executed by Bayley creating or declaring one. But it is claimed by the orator, that there was a resulting trust, arising by operation of law, on the part of Jacob Bayley, and this court ought to compel an execution of it. We admit the doctrine of resulting trusts; but insist that nothing was done by the proprietors, and land owners of Newbury, from which such a trust could arise in this case. 4 Kent's Com. 3 ed. 305–6 ; 1 Cruise's Dig. 311, pl. 41 ; *Lloyd* v. *Spittet,* 2 Atk. 150.

In *Peebles* v. *Reading,* 8 Serg. & Rawle. 484, Duncan, J. said, " if a man employs another, by parol, as his agent, to buy an estate for him, and the agent buys, and pays for it with his own money, and takes the conveyance in his own name, it would not be a resulting trust." 2 Sugden, 317–18 & n. In the case at bar, it should be remembered, Samuel Hale claimed to be the owner of the lot in question, by virtue of a quit claim deed, from John and Anna Hugh, at the time Jacob Bayley obtained the New York charter. The orator, therefore, *in order to sustain his bill, must satisfy* the court that Jacob Bayley, in his life time, held the lot in question, in trust for Hale. This we think, cannot be done—for

Hale was not one of the proprietors of Newbury, under the New Hampshire charter, and no part of the cost of the New York charter, was sustained by him. *Steere* v. *Steere*, 5 Johns. Ch. R. 1; *Botsford* v. *Burr*, 2 Johns. Ch. R. 409.

3. If any trust was created by the New York charter, on the part of Jacob Bayley, it was, we insist, conditional; that is to say, he was only under obligation to convey to such of the proprietors and land owners of Newbury, as should apply to him within a reasonable time for deeds, and pay their proportions of the expenses incured by him in procuring the charter. A trustee, acting in good faith, is always entitled to a prompt indemnity for his necessary disbursements and expenses, and has a lien on the trust property for them. *Murray* v. *De Rottenham*, 6 Johns. Ch. R. 62; and it makes no difference whether they were stipulated for or not. *McMiller* v. *Scott*, 1 Monroe's R. 151; 2 Eq. Dig. 505, pl. 32, 33; *Shaver* v. *Radley*, 4 Johns. Ch. R. 319.

4. From the lapse of time, and the death of all the original parties, the court will presume a discharge and extinguishment of the trust, if one existed. Jacob Bayley lived in Newbury forty three years after he procured the New York charter, and no person, claiming to own the lot in question, applied to him for a deed of it. The presumption, therefore, is irresistable, that Bayley was discharged from his trust, or that the pretended owner of the lot abandoned it, rather than apply for a deed and pay his proportion of the expense of the charter.

It is too late, we think, after the lapse of seventy years, to call for the execution of a trust resting in parol. *Prevost* v. *Gratz*, 6 Wheat. 481; *Hillary* v. *Waller*, 12 Ves. 261 266.

5. If Jacob Bayley held the lot in trust, the court will not compel the defendent, Harrison Bayley, to execute it, because he had no notice of it at the time of his purchase. It is well settled, we apprehend, that the purchaser of the legal title cannot be affected by any latent equity, of which he has not actual notice, or which does not appear on some deed necessary to the deduction of his title.

Notice of the pretended trust is denied by the defendants answer, and no proof has been taken to contradict it.

ORANGE,      Actual notice of trust must be proved; vague reports will
*March,*     not be sufficient, 2 Sugden, 315, 316. 1 Story's Eq. 75,
1843.        119, 120, 372, 396, 399. Nor will a general claim of title
Johnson      be sufficient to affect a person with notice of a deed, of
*v.*         which he does not appear to have had knowledge. 2 Sug-
Bayley.      den, 316, 339; *Jolland* v. *Stainbridge*, 3 Ves. Jr. 478.
So in the case at bar, notice to the defendant, that the ora-
tor claimed the lot in question, by possession, was not sufficient
to affect him with notice of the trust charged in the bill, of
which it appears he had no knowledge. 2 Sugden, 295.

But it is said, the defendant cannot claim as a *bona fide* pur-
chaser without notice of the trust, because he paid only $50
for the lot and that in his own note which is now outstanding
against him.   In answer to this objection we say, 1. that the
question is not whether the consideration is adequate, but
whether it be valuable.   For if it be valuable, inadequacy is
no objection to it.   2. That a negotiable promissory note,
given for the purchase money of property, is, in this state,
payment. *Hutchins* v. *Olcutt*, 4 Vt. R. 549.   The reason
why it should be alleged, in the place of *bona fide* purchase,
that the consideration money has been paid, is, that the pur-
purchase is incomplete until it is paid, and the purchaser will
be relieved against the payment. 2 Sugden, 357.

6. If the orator has failed to make out the trust char-
ged in his bill, and notice of it to the defendant, before his
purchase, he cannot expect a decree in his favor; for the
other charges in his bill, if true, are not sufficient to sustain
a decree for any relief whatever.

7. But we say the equitable interest was in Jacob Bayley,
for the N. H. Charter was void and gave no interest in law
or equity, of itself, and the settlements were made with this
knowledge.   And if an equity existed among the N. H.
grantees as between themselves for the actual improvements
made on their particular lots, and for the expenses of the
charter, and for roads, &c. it was not by virtue of the char-
ter, as such, but because labor deserves its reward. And it
was only for the amount of those improvements and that
expense.

*A. Underwood, J. Berry,* and *L. B. Peck,* for orator.

The New-York charter recites that it was petitioned for

by Jacob Bayley, in behalf of himself and the proprietors and inhabitants of Newbury, and the testimony, written and oral, shows conclusively that that charter was in trust for the grantees and proprietors under the New-Hampshire grant.

Another important fact should not be lost sight of. The orator and his father have, for the last half century, paid the taxes assessed upon the lot, while there is no evidence tending to show that Jacob Bayley ever set up any claim to it.

The fact that Jacob Bayley took the charter, *in trust,* being established, the question then arises, would not this court compel him, were he now living, to execute the trust? If it should be insisted that the case is within the statute of frauds, or that all relief is barred by the lapse of time, it is a sufficient answer that no such ground of defence is taken by the answer.

But were this difficulty removed, neither of these objections could be sustained.

1. The trust is not within the statute, as it arises from the situation of the parties. Bayley was the agent of the New-Hampshire claimants in the matter, and it would have been a fraud on them, if he had taken and held the conveyance in his own right. This a court of equity would not permit him to do, and it is what he never claimed to do. The trust most clearly arises by implication of law, or in other words, it is a resulting trust. *Geddings* v. *Eastman,* 5 Paige 561 ; *Holdridge* v. *Gillespie,* 2 Johns. Ch. R. 30 ; *Davoue* v. *Fanning,* do. 252, 4 Kent's Com. 301 ; *Van Horne* v. *Fonda,* 5 Johns. Ch. R. 388, 409. But if the trust was within the statute, it is proved by writing, under Jacob Bayley's own hand, viz, the record of the vote of the proprietors authorizing him to proceed to New York and take a charter, and his petition to the governor of New York. This proof would entitle the orator to a decree, as the statute of 1797 did not require that a trust should be *created* by writing, but that it should be proved by writing. *Foster* v. *Hale,* 3 Ves. 695 ; *Movan* v. *Hoys,* 1 Johns. Ch. R. 342.

2. The lapse of time is no bar to the relief sought. No claim adverse to the orator's title has been set up until a very recent period, and no possession of the lot taken until defendant entered. The statute never commences running

against a title to real estate until an adverse claim is set up, and neither courts of law nor equity presume a conveyance or surrender of title except to quiet a long continued possession. In this case, the orator has no remedy at law, and relief being, exclusively, the object of equity jurisdiction, the statute cannot be pleaded. *Carter* v. *Murray*, 20 Johns. R. 576; *Kane* v. *Bloodgood*, 7 Johns. Ch. R. 90; *Baker* v. *Whiting*, 3 Sumner, 486; *Prevost* v. *Gratz*, 6 Wheat. 481; *Elmendorf* v. *Taylor*, 10 Wheat. 168; *Cholmondely* v. *Clinton*, 2 Jac. & Walker, 1. Same case is also reported in 2 Merrivale, where it was decided by the master of the rolls.

3. Bayley's title was passed to the defendant by the administrator's deed, and he now holds the trust estate, and stands in Bayley's place. The defendant cannot protect himself from a decree for several reasons.

1. At the time and before he took his deed he had full knowledge that the orator claimed to own the lot.

2. The purchase money has not been paid. Securing it by note is not sufficient to support the defence that the defendant was a *bona fide* purchaser without notice. Nothing short of an *actual payment* will do. *Jewett* v. *Palmer*, 7 Johns. Ch. R. 65; *Frost* v. *Beekman*, 1 ib. 288; *Wormly* v. *Wormly*, 8 Wheat. 421; Beame's Pleas in Equity, 246; Sugden's Vendors, 356–8.

3. When a defendant relies on being a *bona fide* purchaser, he must state that the vendor was in possession. *Strode* v. *Blackburn*, 3 Vesey, 226; *Wallwyn* v. *Lee*, 9 ib. 30; *Daniels* v. *Davison*, 16 ib. 252; *Boom* v. *Chiles*, 10 Peter's, 211; Beame's Pleas in Equity, 244. He must also state that the vendor was seized or pretended to be seized. *The Attorney General* v. *Backhouse*, 17 Vesey, 290; Sudgden's Vendors, 353.

4. The conveyance by the administrator is a mere release. It contains no covenant that the intestate had a title. No case can be found where a purchaser under such a conveyance has been permitted to protect his purchase. The small consideration, ($50) paid for the lot by the defendant, is strong evidence tending to show that the purchase was not *bona fide*.

5. The claim set up by the defendant, that the lot in ques-

tion is chargable with its proportion of the expense of Jacob Bayley in procuring the New Hampshire charter and the confirmation charter from New-York, has no foundation. The deposition of Isaac Bayley shows that his father never claimed any thing for obtaining the New-York charter, and that the witness paid this expense. There is no evidence tending to prove that the expense of the New Hampshire charter was not paid. Gen. Bayley's declarations are not evidence on this point. These expenses were a charge on the proprietors in their corporate capacity, and after the lapse of half a century they must be presumed to have been paid.

But this defendant has nothing to say on this subject. If Gen. Bayley or his representatives do not assert a claim on this ground, the defendant is not to be heard in this matter.

The opinion of the court was delivered by

WILLIAMS, Ch. J. — The orator states in his bill, that he is the equitable owner of lot, No. 55, in Newbury ; that the legal title was in Jacob Bayley at the time of his death, and that his administrator had, by his deed, conveyed this title to the defendant in violation of the trust and duty of Jacob Bayley, which devolved on his administrator.

It appears that in 1763, Benning Wentworth, then governor of New-Hampshire, and then exercising jurisdiction over the territory comprehending the town of Newbury, granted the same to seventy-five proprietors, of whom John Hugh was one ; that an order of the king of Great Britain in council was made in 1764, by which the west bank of Connecticut river was to be the west line of the province of New-Hampshire, and the dividing line betwen that province and the province of New-York. It appears, further, that the proprietors, under the New-Hampshire charter, first met June 13, 1763, and held several proprietors' meetings in that, and the succeeding years ; that, in May, 1765, in consequence of the king's proclamation, they voted to send agents to New-York to acknowledge their jurisdiction, and beg their protection, and at a proprietors' meeting, held November, 1771, they voted that Jacob Bayley proceed to New-York, and take a patent for them, and to act for them in other matters, as he should find for their good, and at this meeting, seven-eighths

of the proprietors are stated to have been present. Mr. Bay-
ley, who is called General Bayley by the proprietors, in 1772,
obtained a charter from New-York, in the manner which
was then customary, in which the land was granted to him
and twenty-four other persons therein named, who immedi-
ately, by deed of lease and release, conveyed the whole
tract to him. In this grant it is recited that he petitioned for
himself and the proprietors and inhabitants, and, on the pre-
senting the petition, it was ordered by the governor and
council of New-York, that, previous to passing the grant,
the grantees, or some of them, should execute a bond, con-
ditioned to convey to the proprietors under the New-Hamp-
shire charter, except Benning Wentworth, the several lots,
shares and proportions which they were entitled to under the
grant from New-Hampshire, on their paying their proportion
of all fees, expense, &c. This grant, thus obtained, was a
confirmation grant, as they were termed. After this, the
proprietors continued to hold proprietors' meetings, until as
late as 1791, and possibly afterwards. In 1788, a proprie-
tors' meeting was called by General Bayley, as proprietors'
clerk, the application for which was from persons calling
themselves proprietors in the township granted by governor
Wentworth. From the testimony of the son of General Bay-
ley and others, it appears that General Bayley always deeded
to the New-Hampshire proprietors, when requested ; that he
claimed no expenses or fees from them ; they were probably
paid in the manner hereafter mentioned. From the proceed-
ings of the proprietors ; the part taken in them by General
Bayley ; his petition to the governor of New-York, and the
recital in the grant, it is abundantly manifested and proved,
by writing, as well as by the testimony, that he acted as
agent of the New-Hampshire proprietors, and held the land
in trust for the New-Hampshire proprietors, himself among
the others. The number of rights which he, as well as others,
claimed to hold, appears in the proprietors' records. It is,
therefore, of no importance, at this day, to inquire how many,
or how few, of the New-Hampshire grantees settled in the
town of Newbury, as it is manifest that the town was settled
under the proprietors named in the New-Hampshire grant ;
the evidence of which was then well known and under-
stood. If any of the proprietors under New-Hampshire,

abandoned their rights, and never set up any claim, or acts of ownership, lapse of time may, at this day, prevent any claim from being set up thereto. It remains, therefore, to inquire whether there has been any such abandonment of the right of John Hugh, a part of which right the orator claims.

It appears that, so far from Hugh abandoning his right, in 1770, he conveyed it to Hale ; that Hale, in 1779, conveyed lot No. 55 to Thomas Johnson, the father of the orator, and, under the will of Thomas Johnson, proved in 1819, this lot became the property of the orator ; that, in 1799, 1805, 1808, and several other years, Thomas Johnson paid the taxes on this lot, and all the taxes have been paid by the orator and his father, and none by the defendant, or General Bayley. It further appears by the proprietors' records, that Hugh drew lots to two rights, and one of his lots, No. 11, the grantee of Hugh conveyed to General Bayley, who had previously conveyed it to Doct. Witherspoon ; General Bayley thus recognizing the very title under which the orator claims. General Bayley died poor.

A question, then, is raised whether General Bayley had not some claim on this lot, for his expenses, fees, &c. The expenses in obtaining the New-Hampshire charter appear to have been trifling, but seventeen dollars in the whole, and for the expenses of obtaining the charter from New-York, it appears that General Bayley never asserted any claim. The money for that purpose was probably raised by his sale to Doct. Witherspoon, and George Clinton, and one of the lots, set to the rights claimed by Hugh, No. 11, was sold by Bayley to Doct. Witherspoon, and, afterwards, deeded to Bayley by Hale, the owner of the right.

The inquiry then is, is there any thing disclosed, in this case as a reason why the trust should not be executed, and the defendant decreed to deed to the orator. Every thing is in favor of decreeing the conveyance and nothing opposed to it. The orator and the grantees under Hugh have ever claimed that right. All the taxes on this lot have been paid by the orator and his father. No claim, or act of ownership by Gen. Bayley, in his life time, is proved. He died poor, and no administration was taken of his estate for fifteen years. The doctrine of abandonment and lapse of time, which has been insisted on so strongly by the defendant, ap-

Johnson
*v.*
Bayley.

plies with much greater force against the defendant than against the orator.

From the evidence in the case, in a trial at law, the jury would be directed, at this time, to presume a grant from General Bayley to the claimants under the right, according to the doctrine of the case in 4 Wend. p. 58 ; but, as the defendant has improperly interfered between *the trustee* and the *cestui que trust*, it may be proper, to put an end to litigation, to compel him to convey to the orator. Whether he will have to pay the fifty dollar note to the administrator of General Bayley, is of no importance in this case ; nor can he complain, if, having bought one lawsuit, he finds himself visited with as many as may be necessary to prevent the consequences of an improper and unjustifiable interference with the claim of the orator. Nor can he call on this court to protect him from the consequence of an unprofitable purchase of a lawsuit, as such purchases are not favored in a court of equity.

The decree of the chancellor is, therefore, affirmed with additional cost.